FILED & ENTERED

MAY 27 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Simion Popescu | Case No.:  1:12-bk-15279-MT |
| | Adv No:   1:12-ap-01312-MT |
| Debtor(s). | |
| Patrician Apartments, LLC | **MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff(s), | |
| v. | |
| Simion Popescu | Date:        March 19, 2014<br>Time:       12:00 p.m.<br>Courtroom: 302 |
| Defendant(s). | |

    On or about August 17, 1994, defendant Simion Popescu ("Defendant") was hired by plaintiff Patrician Apartments, LLC ("Plaintiff") as the resident manager for the 76-unit apartment building owned by Plaintiff. Defendant's duties included, but were not limited to: (1) negotiating and executing apartment leases, including setting rental rates at a fair market value to benefit Plaintiff's business; (2) collecting, recording and depositing rent paid by tenants; and (3) serving as a liaison between tenants and Plaintiff. Plaintiff alleges that at all relevant times, Defendant was acting as its agent and employee.

    Plaintiff alleges that, on or about February 18, 2008, it discovered that Defendant was failing to act in its interest and intentionally causing damage to Plaintiff's business. Plaintiff

alleges that Defendant repeatedly charged tenants less than market rental rate for apartments in exchange for upfront cash kick-backs from tenants. Specifically, Plaintiff alleges that from 2002 through 2008 Defendant charged tenants monthly rent at about $325 - $425 less than market rate. Plaintiff alleges that Defendant charged "kick-backs" ranging from $2,000 - $3,000. Plaintiff alleges that Defendant did not document these cash payments, nor did Plaintiff consent to Defendant's receipt of the alleged cash payments. Plaintiff alleges that, on at least one occasion, it directed Defendant to charge not less than $800 per month for rent. Plaintiff alleges that despite this notice, Defendant thereafter executed a lease for rent in the amount of $525 per month on September 1, 2007 (the "September 1 Lease"). Plaintiff maintains that because these apartments are rent controlled, it may not now raise the rents to their market level. Plaintiff argues that in that respect it has also been damaged, because the value of the property and rentals for each unit has been permanently impaired.

On February 14, 2012, Plaintiff filed a complaint for damages in Los Angeles Superior Court (the "State Court Action"). The complaint in the State Court Action pleaded only a cause of action for breach of fiduciary duty, and requested damages in excess of $2,000,000, in addition to attorney's fees, costs, and punitive damages.

On June 6, 2012, Defendant filed a voluntary chapter 7 petition, wherein he listed Plaintiff's lawsuit on his Statement of Financial Affairs, and later amended his Schedule F to list Plaintiff's claim for $2,000,000 and the claim for attorney's fees in an unknown amount. Defendant's bankruptcy filing stayed the proceedings in the State Court Action, although default judgment was entered against him on June 7, 2012. Plaintiff did not file a motion for relief from the automatic stay to pursue a default judgment against Defendant; Plaintiff's motion to enter default judgment in the state court action was filed prior to Defendant's bankruptcy filing. On September 7, 2012, Plaintiff filed a complaint to determine the dischargeability of the debt allegedly owed. The bankruptcy case was closed and discharge entered on September 26, 2012.

**Procedural History**

On November 7, 2012 the Court granted in part and denied in part Defendant's Motion to Dismiss. The Court granted Defendant's request to dismiss Plaintiff's claim of embezzlement under § 523(a)(4) with leave to amend, and denied Defendant's request to dismiss Plaintiff's claim for intentional interference with prospective economic advantage under § 523(a)(6). Plaintiff amended the adversary complaint on December 7, 2012. Defendant then brought another Motion to Dismiss on January 7, 2013. The Court continued the hearing to allow further briefing on the statute of limitations issue. The Court then denied Defendant's Motion to Dismiss under Bank v. Gill Distrib. Ctrs., Inc. (In re Banks), finding that because the State Court Action was timely filed, the adversary complaint was likewise timely filed. 263 F.3d 862, 867-68 (9th Cir. 2001).

**The Present Motion for Summary Judgment**

Defendant has filed this Motion for Summary Judgment (the "Motion") on the basis that the Statute of Limitations expired before the Plaintiff filed its State Court Action and therefore, the Adversary Proceeding is untimely. Defendant argues that the Plaintiff discovered or should have discovered the wrongful conduct as early as August of 2007 and definitely by December 26, 2007, when Defendant's employment was terminated. Defendant argues and Plaintiff agrees that the owner of Patrician Apartments, Jerald Indvik, had a meeting with a former tenant on August 18, 2007. Plaintiff's Opposition to MSJ 6:7-15. This former tenant, "Aram Afarinesh, claimed that, at Defendant's suggestion, she had paid Popescu $3,000 in cash in exchange for renting to her, on behalf of Patrician, an apartment for $525 instead of what she claimed was the

market rate of $800 per month." Id. This former tenant advised Mr. Indvik that she had several friends who had entered into similar agreements with Defendant. It is unclear, however, whether this former tenant provided the names of these other tenants.

Although, Mr. Indvik wasn't sure whether the former tenant was credible, Plaintiff claims it promptly undertook steps to investigate Ms. Afarinesh's claims. Id. at 6:16-17. Popescu had been instructed to fill out a receipt from a receipt book whenever he received cash from a tenant. Id. at 5:27-6:6. *See also* Decl. of Andrew Jablon Ex. A: Deposition Transcript of Simion Popescu. Plaintiff asserts these receipt books maintained by Popescu did not support Ms. Afarinesh's claims, "and asking Popescu directly about Afarinesh's Claim would have been pointless." Id. at 6:17-21. Plaintiff then decided to independently conduct a comprehensive survey of rents charged by comparable properties in the area, given Popescu's repeated representation that he conducted regular market surveys to determine rental rates. Id. at 6:21-27. Plaintiff claims that although it had not completed its investigation into Ms. Afarinesh's claims, following the September 1 Lease where Defendant ignored Plaintiff's express instructions, it decided to terminate Defendant's employment. Id. at 7:4-9.

Plaintiff claims it needed a replacement manager ready to take over the day-to-day operations of the complex before firing Defendant. Id. at 7:10-16. It claims the process was done surreptitiously to prevent Defendant from gaining knowledge and quitting without having a proper replacement. Id. "When Defendant was terminated, he denied Afarinesh's Claim." Id. Plaintiff asserts:

> Rather than confronting tenants about whether they had been complicit in a scheme to defraud their landlord, which would be unlikely to yield reliable information, Plaintiff allowed a short period of time for the new on-site manager to build a rapport with the tenants and then circulate a non-threatening survey that simply asked tenants to identify:
>
> 1. the occupants of the apartment
> 2. what deposits were paid
> 3. whether they had any pets
> 4. any additional notes for the landlord.

Id. at 7:26-8:8. Plaintiff claims responses to these surveys started to come in on or about February 18, 2008, when Plaintiff had sufficient facts to warrant filing the State Court Action. Id. at 8:9-10.

In his reply, Defendant argues that the "evidence put forth by Plaintiff lists several implausible reasons why after conducting this inquiry [after his meeting with Ms. Afarinesh], he waited another six months to terminate defendant." Defendant's Reply 3:23-28. Defendant claims Plaintiff's story is "simply not credible." Id.

**Summary Judgment Standard**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

**Failure to Raise Defense in State Court Action**

Plaintiff argues that, "[t]he statute of limitations is waived as a matter of law where the defendant failed to raise the statute as a defense before entry of default," citing to Bell v. Travelers Indem. Co. of Hartford, Conn., 213 Cal. App. 2d 541, 547 (Cal. Ct. App. 1963).[1] However, Plaintiff's reliance on this case is misplaced where default judgment was entered against the defendant.

Defendant filed his chapter 7 petition on June 6, 2012, while default judgment in the state court action was entered on June 7, 2012, in violation of the automatic stay. The default judgment is therefore void. Plaintiff fails to provide any legal basis as to why or how Defendant's failure to raise the statute of limitations defense in the state court action constitutes waiver, particularly when no responsive pleading was ever filed and the default judgment is void.

While no one has pointed to any case factually on point, the Ninth Circuit has liberalized the requirement that affirmative defenses be raised in a defendant's pleadings. *See* Healy Tibbitts Constr. Co. v. Insurance Co. of North America., 679 F.2d 803 (9th Cir. 1982). In Rivera v. Anaya, the Ninth Circuit held the failure to raise the defense of the statute of limitations in the initial pleadings did not preclude the party from making a motion for summary judgment based on that defense, absent prejudice to the plaintiff. 726 F.2d 564, 566 (9th Cir. 1984). The appellant in Rivera had not claimed prejudice. Similarly, Plaintiff has not claimed prejudice in its pleadings. As mentioned above, no responsive pleading was filed in the prior state court proceeding. The Defendant has raised the statute of limitations defense in the present case before, including in his motion to dismiss. Accordingly, Defendant is not precluded from raising the statute of limitations defense.

**Statute of Limitations**

The statute of limitations "commences to run, once he has 'notice or information of circumstances to put a reasonable person *on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation….'"* Gutierrez v. Mofid., 39 Cal. 3d 892, 896-97 (1985), citing Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 101 (1976). Under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action. Fox v. Ethican Endo-Surgery, Inc., 35 Cal. 4th 797, 803 (2005). In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis. Id.

---

[1] Note incorrect case name (correct case name: Travelers Indem. Co. of Hartford, Conn., 213 Cal. App. 2d 541 (Cal. App. 2d Dist. 1963). Also, quote is not from the case Plaintiff cites.

The Court notes that the resolution of a statute of limitations issue is normally a question of fact. *See* Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th at 810; Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1112 (1988). The [bankruptcy] court may grant summary judgment only if uncontroverted evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the cause of action but failed to file a timely complaint. Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1057 (9th Cir. 2012).

**Fraudulent Concealment**

Plaintiff has asserted that Defendant keeps the record of receipt books and hands them over to Plaintiff once the books are full. Plaintiff states that these receipt books, as well as the lease agreements, did not reveal to Plaintiff that any money was being exchanged between the tenants to Defendant other than the security deposit and the rent payments according to the terms of the lease agreements.

In situations involving fraudulent concealment, the delayed discovery rule is based on actual notice rather than inquiry notice. Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030, 1042 (C.D. Cal. 2003). The trier-of-fact must determine whether the information plaintiff knew or should have known in the exercise of due diligence "would have disclosed the specific cause of action (or claim) at issue. The fraudulent concealment doctrine tolls the running of the statute of limitations if that information would not have disclosed the specific claim." Migliori v. Boeing N. Am., Inc., 114 F. Supp. 2d 976, 986 (C.D. Cal. 2000).[2] The doctrine does not apply if the plaintiff is unable to learn the relevant facts, through no fault of the defendant. Id. The plaintiff is still "under a duty to seek out the facts if a suspicion exists." Id.

> "[The plaintiff] carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." Conmar, 858 F.2d at 502 (citing Rutledge v. Boston Woven Hose & Rubber Co., 576 F.2d 248, 249-50 (9th Cir. 1978)) (emphasis added). "A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action." Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1521 (9th Cir. 1983).
>
> If a defendant proves that the plaintiff had actual or constructive knowledge of the facts giving rise to the claim, the doctrine of fraudulent concealment does not apply. Id. "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to the discovery of the fraud."

Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012)

---

[2] Defendant relies on Hobart v. Hobart Estate Co. in his reply. 26 Cal. 2d 412 (1945). However, this case does not address the fraudulent concealment doctrine and instead deals with delayed discovery for the statute of limitations of fraud.

The fraudulent concealment doctrine does not apply in this case. Plaintiff's meeting with the former tenant, Ms. Afarinesh, in August of 2007 was sufficient to give constructive knowledge of the facts giving rise to the claim and put Plaintiff on inquiry notice. Although Plaintiff's investigation initially did not reveal any wrong doing, Defendant did not interfere with Plaintiff's investigation, and no facts are provided to show any concealment after this point. Defendant did not hide the tenant's identities or prevent Plaintiff from talking to them. Defendant did not conceal the fact that he had leased another apartment for less than $800 after Plaintiff had instructed him not to. In fact, Defendant sent this September 1 lease to Plaintiff. Defendant's denial of the kickbacks alone is not sufficient to constitute fraudulent concealment. Thus, the fraudulent concealment doctrine does not apply because Plaintiff's owner, Mr. Indvik, could have spoken to the tenants himself. His choice not to approach his tenants resulted in his inability to learn of the relevant facts, through no fault of Defendant.

Nevertheless, the Court considers whether Plaintiff was unable to conduct a reasonable investigation to reveal a factual basis for the cause of action before February 2008.

**Delayed Discovery**

The Court is left to determine whether the investigation conducted by Plaintiff which led it to discover the necessary facts by February 18, 2008 was reasonable such that the Statute of limitations is tolled under the delayed discovery rule. That is a close call.

Plaintiff asserts that it took steps to promptly investigate a potential claim following the August 2007 meeting with the former tenant. Plaintiff provides evidence that it began to 1) investigate the rent charged by comparable properties in the area; 2) look for a replacement manager to take over the day-to-day operations without Defendant gaining knowledge; and then 3) waited for the tenants to develop a relationship with the new manager before sending out a survey asking tenants about the deposits they paid for their apartment. (the "Plan of Investigation"). Plaintiff claims that the answers to these surveys began to come in on February 18, 2008 – the day it discovered it had a cause of action against Defendant. Plaintiff argues the "trigger date" is therefore February 18, 2008 because prior to receiving the surveys, Plaintiff was only aware of one allegation against the Defendant, which at that time was not supported by the available records. Plaintiff contends that any delays in the investigation were reasonable because it could not just ask the tenants if they were involved in the kickback scheme. Plaintiff asserts that it was only after a replacement manager could be installed, and the surveys were circulated, was it able to ascertain facts to know that it had a claim against the Defendant.

Defendant, on the other hand, claims that Plaintiff's reasons as to why it waited another six months to terminate him are implausible. Defendant asserts that Plaintiff's "story is simply not credible." Defendant's Reply 3:26. Defendant goes on to argue that Plaintiff had a duty to act in a reasonably prudent manner to investigate after the August 2007 meeting.

The hard question is when did Plaintiff have sufficient facts or knowledge of Defendants wrongful acts? At the motion for summary judgment stage, all reasonable inferences are to be drawn in favor of the Plaintiff. Whether Plaintiff exercised due diligence is a question of fact. Thus, in this case, there is a triable issue of fact as to whether Plaintiff exercised reasonable diligence to discover sufficient facts to know that he had a claim against the Defendant. Plaintiff has the benefit of all reasonable inferences in its favor at this stage of the case. While defendants arguments as to the unreasonableness of plaintiff's conduct are quite persuasive, they may only carry the day at trial, not where inferences must be made in favor of Plaintiff.

It is undisputed that Plaintiff had notice of a potential claim by August 18, 2007, when Mr. Indvik met with the former tenant. The initial investigation of the receipt books, however,

did not reveal that Defendant was engaged in systematic breach of his fiduciary duty and taking kickbacks. Consequently, although Plaintiff had knowledge of some wrongdoing in August 2007, it does not necessarily indicate that Plaintiff had sufficient facts for a cause of action. This is an issue to be properly determined at trial.

Thereafter, Defendant passed along the September 1 Lease to Plaintiff. At that time, Plaintiff had knowledge that Defendant was not following his instructions and decided to terminate Defendant. Plaintiff chose, for the purposes of business convenience, to wait close to four months before firing Defendant. Plaintiff then waited to file the underlying state court action until just under four year statute of limitation period, on February 14, 2012. There is a question that will have to be answered at trial based on the credibility of the witnesses and all the circumstances as to whether this four month delay was simply for business convenience or necessary to determining whether there was a cause of action.

Whether Plaintiff's plan of investigation and its decision to wait to find a new manager before firing Defendant and sending out the surveys two months later was reasonable, requires a determination of fact. It is debatable how reasonable Plaintiff's actions were but it is nonetheless a question of fact to be determined at trial. Defendant's argument that Plaintiff's story is simply not credible is an insufficient basis to grant the Motion because credibility is not something that cannot be decided on summary judgment.

At this stage, all inferences are drawn in favor of the Plaintiff, and for that reason, the motion for summary judgment is DENIED.

###

Date: May 27, 2014

Maureen A. Tighe
United States Bankruptcy Judge